## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *Irizarry*, 8:20cv22444 | Judge M. Casey Rodgers Magistrate Judge Hope T. Cannon |

## ORDER[1]

This matter is before the Court on Defendant 3M Company's motion for summary judgment. *See* ECF No. 13. On full consideration, the motion is **GRANTED IN PART and DENIED IN PART**.

## I.      Legal Standard

Summary judgment is appropriate where the record reflects there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). A dispute of fact is "genuine" if "the evidence is

---

[1] This Order assumes the parties' familiarity with the general factual allegations and nature of this multidistrict litigation.

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000) (citing *Celotex*, 477 U.S. at 323). Once that burden is met, the nonmoving party must "go beyond the pleadings" and present competent record evidence showing the existence of a genuine, material factual dispute for trial. *Celotex*, 477 U.S. at 324. In doing so, and to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The "mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 252. In assessing whether a movant is entitled to summary judgment, a court must view the evidence and factual inferences drawn therefrom in the light most favorable to the non-moving party. *See id.* at 255; *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). Ultimately, summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex*, 477 U.S. at 323.

## II.    Discussion

Irizarry asserts fifteen claims against Defendant 3M Company under Alabama law arising from injuries he alleges were caused by his use of the Combat Arms Earplug version 2 ("CAEv2") during his military service. *See* 1st Am. Compl., ECF No. 4.[2]  Defendant moves for summary judgment on all fifteen claims.  In response, Irizarry seeks voluntary dismissal of his express warranty (Count V), negligence per se (Count XII), and consumer protection claims (Count XIII).[3]  *See* Irizarry Resp., ECF No. 20 at 1.  The Court addresses the remaining claims in turn.

### A.    Strict Liability Claims (*Counts II and IV*)

Irizarry alleges strict liability claims for design defect and failure to warn. Defendant argues that those claims are foreclosed by, or at a minimum must be construed under Alabama's Extended Manufacturer's Liability Doctrine ("AEMLD").  In response, Irizarry maintains that strict liability claims remain

---

[2] The parties agree that Alabama law applies to Irizarry's claims.  *See* ECF No. 11.

[3] Irizarry's response brief states that he "voluntarily dismisses his express warranty claim, his negligence per se claim, and his claim for violation of consumer protection laws."  *See* Pl. Resp., ECF No. 20 at 1.  However, Rule 41(a)—which governs voluntary dismissals—only permits the dismissal of an entire action, not individual claims.  *Rosell v. VMSB, LLC*, 67 F. 4th 1141 (11th Cir. 2023).  Nevertheless, Irizarry's express warranty, negligence per se, and consumer protection claims have clearly been abandoned; therefore, summary judgment is granted in favor of Defendant on those claims.  *See Am. S. Homes Holdings, LLC v. Erickson*, No. 4:21cv95, 2023 WL 4032657, at *2 n.1 (M.D. Ga. June 15, 2023) (granting summary judgment to plaintiff on counterclaim that had "clearly been abandoned" where parties had stipulated to its dismissal but other individual claims remained).

cognizable under Alabama law but concedes that the claims are governed by the AEMLD. The Court agrees.

Alabama law does not adhere to traditional common law strict products liability principles, but instead follows a "hybrid form of strict liability" under the AEMLD that retains, among other things, various affirmative defenses, including contributory negligence, assumption of risk, and under certain circumstances, lack of a causal connection. *See Sears, Roebuck & Co., Inc. v. Haven Hills Farm, Inc.*, 395 So. 2d 991, 994 (Ala. 1981); *Bodie v. Purdue Pharma Co.*, 236 Fed. App'x 511, 517 n.9 (11th Cir. 2007); *Judson v. Nissan Motor Co.*, 52 F. Supp. 2d 1352 (M.D. Ala. 1999). "[I]n practice, [however,] an AEMLD claim is similar to a traditional strict product liability claim," such that a claim pled as strict liability is properly construed as "being based upon the AEMLD." *See Bodie*, 236 Fed. App'x at 571 n.9 (construing strict liability claim as an AEMLD claim under Alabama law); *Aldridge v. Ethicon, Inc.*, No. 1:20cv039, 2020 WL 1308335, at *3 (S.D. Ala. Mar. 19, 2020) (same); *Miller v. Pfizer Inc.*, No. 4:13cv1687, 2014 WL 2155020, at *2 (N.D. Ala. May 22, 2014) (same). So too here. Irizarry's strict liability claims are properly construed as AEMLD claims. Therefore, Defendant's motion for summary judgment is denied as to the strict liability claims alleged in Counts II and IV; however, the claims will be governed by the AEMLD.

**B.     Causation—Design Defect & Failure to Warn (*Counts I-IV*)**

Defendant argues that Irizarry cannot establish proximate causation for his design defect and/or failure to warn claim because he has failed to show: (1) that the CAEv2 caused his alleged injuries; (2) that an alternative design existed at the relevant time that would have reduced or eliminated his injuries; and (3) that a different warning would have caused the government not to purchase the CAEv2, would have been seen by Irizarry, and prevented his injuries.  These arguments fail.

First, the Court has already determined that Irizarry's specific causation expert, Dr. Michael Armstrong, provided a scientifically reliable basis for his opinions that the CAEv2 caused Irizarry's auditory injuries.  *See Daubert* Order, ECF No. 23 at 1-4.  Dr. Armstrong's opinion is sufficient to raise a triable issue of fact as to whether the CAEv2 is the proximate cause of Irizarry's injuries.

Second, Irizarry has produced sufficient evidence that safer alternative designs existed when the CAEv2 was on the market, all of which were cost-effective and feasible, and none of which had the design flaws of the CAEv2.  Briefly, Irizarry's design defect claim requires evidence that "a safer, practical, alternative design" was available to Defendant at the time it manufactured the CAEv2.  *See Hosford v. BRK Brands, Inc.*, 223 So. 3d 199, 203 (Ala. 2016) (citing *Gen. Motors Corp. v. Jernigan*, 883 So. 2d 646, 665 (Ala. 2003)).  To satisfy this requirement, Irizarry must show that: (1) the injuries caused by the CAEv2 would have been

"eliminated or in some way reduced" by use of the alternative design; and (2) the utility of the alternative design outweighed the utility of the CAEv2, considering the earplug's intended use; its styling, cost, and desirability; its safety features; the foreseeability, likelihood, and seriousness of the harm that occurred; the obviousness of the defect; and the manufacturer's ability to eliminate the defect. *See id*.

Here, Irizarry has designated three experts—Dr. Mark Packer, Richard McKinley, and Dr. Lawrence Lustig—who have offered opinions that multiple safer alternative designs existed at the relevant time (*e.g.*, CAEv1, Moldex Battleplug, Surefire Sonic Defender) which did not have the CAEv2's design flaws and would have prevented or reduced the likelihood of noise-induced hearing injuries, like Irizarry's. *See* Pl. R. 26 Expert Disclosure, ECF No. 20-1; McKinley Rep., ECF No. 20-2 at 92-109; Packer Rep., ECF No. 20-4 at 107-08; Lustig Rep., ECF No. 20-5 at 56-57. Those experts explain in detail how the feasibility, cost-effectiveness, and efficacy of the proposed alternatives outweighed that of the CAEv2. *See id*. Defendant has not challenged the reliability of those opinions in Irizarry's case, and the Court has already found them scientifically reliable, admissible, and sufficient to establish triable issues of fact for purposes of summary judgment. *See, e.g., In re 3M*, No. 3:19md2885, ECF No. 1680 (Packer, Spankovich, McKinley); *Estes v. 3M*, No. 7:20cv137, ECF No. 53 at 14. Irizarry's specific causation expert, Dr. Armstrong, an otolaryngologist, also demonstrably considered those general

causation opinions and the actual designs on which the opinions were based in the context of his 30 years of experience with hearing protectors, and agreed, *from a clinical perspective*, that the alternative designs "could have been incorporated into the design of the CAEv2 earplugs without substantially changing the product and the feasible incorporation of those designs into the CAEv2 earplugs would have either eliminated the injuries suffered by…Irizarry or made those injuries less severe." *See* Armstrong Rep., ECF No. 17-1 at 5-6, 61; *see also In re Ethicon Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 2016 WL 8788207, at *4 (S.D. W. Va. Aug. 26, 2016) ("A single expert need not provide all the pieces of the puzzle for their testimony to be useful to the jury in determining the ultimate issues in the case."); *In re Wright Med. Tech., Conserve Hip Implant Prods. Liab. Litig.*, 127 F. Supp. 3d 1306, 1320 (N.D. Ga. 2015) ("The facts and data upon which an expert may rely in reaching an expert opinion includes the opinions and findings of other experts, if experts in their respective field would reasonably rely on other expert's opinions and findings."); *Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1357, 1364 (S.D. Fla. 2009) ("[A]n expert's testimony may be formulated by the use of the facts, data and conclusions of other experts, [but] such expert must make some findings and not merely regurgitate another expert's opinion."). Taken together, this expert evidence raises genuine disputes of material fact regarding the existence of a safer alternative design.

Last, Irizarry has produced sufficient evidence that Defendant's alleged failure to warn of the dangers of the CAEv2 proximately caused his injuries. To establish proximate cause for a failure-to-warn claim under Alabama law, the plaintiff must show that "an adequate warning would have been read and heeded and would have prevented the" injury. *See Deere & Co. v. Grose*, 586 So. 2d 196, 198 (Ala. 1991); *M.B.S. ex rel. Reed v. Dant Clayton Corp.*, No. 1:21cv553, 2023 WL 3158945, at *5 (S.D. Ala. April 28, 2023) (quoting *Deere*, 586 So. 2d at 198). Irizarry has done so here.

As an initial matter, Irizarry has produced ample evidence that Defendant did not provide *any* warnings, must less adequate written warnings, to the Army or its soldiers about the dangers associated with use of the CAEv2—dangers about which Defendant was uniquely aware. *Compare* P-GEN-1 (Flange Rep. detailing alleged fit and variability problems with the CAEv2 that occur especially in "subjects with medium and large ear canal") & Berger Tr. Wayman, ECF No. 20-10 at 4 (testifying that neither the Flange Rep. nor its results were "transmitted to the military"), *with* P-GEN-68 (Wallet Card instructing only those with "very large ear canals" to fold back opposing flanges to get a better fit); *Compare* P-GEN-2294, ECF No. 20-9 at 3 (internal email explaining that "[a] shooter should not go to the range and fire a box of shells with the yellow side") & Internal Emails, ECF No. 20-8 at 6 ("If you are at the range shooting and the guns are going off a lot…, the open position of the

[CAEv2] is NOT going to provide protection."), *with* P-GEN-1013 (marketing material explaining the CAEv2 will protect soldiers' hearing from impulse noise such was weapons fire and explosives). Thus, the Court rejects Defendant's attempt to frame the proximate cause argument in terms of whether the Army and/or Irizarry would have read and heeded a "different" or "additional" warning. *See* Def. Mot., ECF No. 13 at 8 ("No evidence shows a different warning to the government would have…caused the government not to purchase the CAEv2[, or that] an additional warning would have altered [Irizarry's] particular outcome."). On this record, the proper question is whether Irizarry has produced sufficient evidence that if a warning had ever been provided, it would have been read and heeded by both the Army and him, and prevented his auditory injuries. The Court finds that he has.

Irizarry has produced evidence that the Army would not have purchased the CAEv2 for use by its soldiers, including him, had Defendant adequately warned of the dangers associated with use of the CAEv2. *See, e.g.*, P-GEN-9 (CID Report). Moreover, Irizarry testified that he was issued the CAEv2 in "a little package" with written instructions (accompanied by pictures), which he read, and was told not to try them on until his earplug "fitting," which he did. *See* Irizarry Dep., ECF No. 20-15 at 4-6. At the fitting, he was told that the CAEv2 was the correct size for his ear canal, and was taught how to insert the CAEv2 and when to use each side (*e.g.*, green end for continuous noise, yellow end for "small arms fire" and situational

awareness).  *See id.* at 6-9.  Irizarry reportedly followed those instructions by wearing the green end "almost exclusively" during military noise exposures from November 2002 to 2006.  *See* Armstrong Rep., ECF No. 17-1 at 40-43, 60.  And, as the Court has already found, safer alternative designs existed that would have prevented Irizarry's injuries.  On this record, a reasonably jury could conclude that: (1) if the Army had been adequately warned of the CAEv2's alleged dangers, it would have declined to purchase the CAEv2 and, instead, issued safer alternatives to soldiers; and (2) just as Irizarry read and followed  the instructions actually given to him, he would have read and heeded adequate warnings, had they been provided, including by using a safer alternative hearing protector, which would have prevented his auditory injuries.  This evidence is sufficient to raise a triable issue of fact under Alabama law regarding whether the CAEv2 proximately caused Irizarry's injuries.

In sum, the Court finds Irizarry has produced substantial evidence that the CAEv2 caused his alleged injuries; that an alternative design existed at the relevant time that would have reduced or eliminated his injuries; and that an adequate warning would have been read and heeded by the Army and Irizarry, and would have prevented Irizarry's injuries.  Because Irizarry has established a genuine dispute of material fact on proximate causation for his design defect and/or failure to warn claims, Defendant's motion with respect to proximate cause for the design defect and failure to warn claims is denied.

### C.     Implied Warranty of Merchantability[4] (*Count VI*)

Defendant argues Irizarry's implied warranty of merchantability claim fails

because it is displaced by the AEMLD and the record lacks evidence of pre-suit

notice, privity, and proximate causation.  The Court disagrees.

First, the AEMLD does not displace implied warranty of merchantability

claims where there is evidence that the product was unfit for the ordinary purposes

for which it is used.[5]  *See Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d

---

[4] Alabama's version of the Uniform Commercial Code provides for both an implied warranty of merchantability and an implied warranty of fitness for a particular purpose.  *See* Ala. Code §§ 7-2-314 (merchantability), 7-2-315 (fitness for particular purpose).  Irizarry's complaint asserts a claim for "breach of implied warranty" without specifying which of Alabama's implied warranties is the basis for that claim.  *See* 1st Am. Compl., ECF No. 4 at 4.  However, Irizarry's response to Defendant's motion for summary judgment on the implied warranty claim discusses only merchantability; it is devoid of argument—or even mention of—fitness for a particular purpose.  *See* Pl.'s Resp., ECF No. 20 at 11-12.  Accordingly, the Court deems any claim for implied warranty of fitness for a particular purpose abandoned, and grants summary judgment in Defendant's favor on that claim.  *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); *see also Jones v. Bank of Am., N.A.*, 564 Fed. App'x 432, 434 (11th Cir. 2014) (stating that "when a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned" and granting defendant's motion for summary judgment because plaintiff failed to respond to certain arguments); *GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1311 n.7 (S.D. Fla. 2017) ("When a party fails to respond to an argument or address a claim in a responsive brief, such argument or claim can be deemed abandoned.").

[5] This differs from implied warranty of merchantability claims where the product *is* fit for its intended use but allegedly presents other inherent dangers when used as intended; claims of that nature may be brought under the AEMLD but not in an action for breach of warranty.  *See Bodie*, 236 Fed. App'x at 522-24 (collecting cases).  So, for example, an implied warranty claim was not available in a case asserting dangerous addictions caused by OxyContin because the evidence showed that the drug was "fit for its intended pharmacological purpose of treating pain" but when used for that purpose it posed an inherent risk of addiction.  *See id.*; *see also In re Trasylol Prod. Liab. Litig.*, No. 1:08md1928, 2010 WL 5140439, at *13 (S.D. Fla. Feb. 16, 2010) (granting summary judgment on implied warranty claim where the "[p]laintiff [did] not argue that Trasylol was not fit for its intended use in reducing perioperative bleeding in patients undergoing cardiac surgery [and] provide[d] no evidence suggesting Trasylol did not successfully reduce perioperative

101, 106-11 (Ala. 2003); *see also Bodie*, 236 Fed. App'x at 523-24.   In those circumstances "a claim alleging breach of an implied warranty of merchantability is separate and distinct from an AEMLD claim."   *See Spain*, So. 2d at 111.   Here, there is no dispute that the ordinary and intended purpose of the CAEv2 was to protect wearers' hearing by attenuating hazardous noise levels.   Irizarry has produced substantial evidence that the CAEv2's alleged fit and seal inadequacies (stem is too short, wide, and stiff; opposing flange contacts tragus causing imperceptible loosening) were such that, when worn as intended, the device itself created a risk of auditory injury rather than protecting the wearer's hearing from hazardous noise. *See* Pl. R. 26 Expert Disclosure, ECF No. 20-1 (designating Packer, McKinley, and Lustig as general causation experts); Armstrong Rep., ECF No. 17-1 at 32-39 (discussing CAEv2 fit and seal problems and consequences).   This evidence is sufficient to establish a triable issue of material fact on whether the CAEv2 was unfit for its intended use as a hearing protector.[6]

---

bleeding," and instead argued "that Trasylol was commercially unfit because it was unreasonably dangerous (in causing renal failure, etc.)").   However, an implied warranty of merchantability claim is cognizable under Alabama law where there is evidence that the product is *unfit* for its ordinary purposes.   *See, e.g., Ex parte Gen. Motors Corp.*, 769 So. 2d 903, 905-06 (Ala. 1999).

[6] *See id.*, 769 So. 2d at 905-06 (reversing summary judgment on implied warranty of merchantability claim where car buyer alleged car was not fit for ordinary purposes and produced evidence that the car constantly stalled—resulting in loss of power steering and brakes—while driving).

Second, as already discussed, Irizarry's specific causation expert, Dr. Michael Armstrong, provided a scientifically reliable basis for his opinions that the alleged fit and seal inadequacies of the CAEv2 caused Irizarry's auditory injuries. *See Daubert* Order, ECF No. 23 at 1-4. Because those same alleged fit and seal inadequacies are the basis for Irizarry's implied warranty of merchantability claim, Dr. Armstrong's opinion is sufficient to raise a triable issue of fact as to whether Defendant's alleged breach of the implied warranty (*i.e.*, by selling an earplug that was unfit to protect hearing) proximately caused Irizarry's injuries.

Third, Irizarry's claim does not fail for lack of privity. In Alabama, there is no privity requirement in a personal injury claim for a seller's breach of the implied warranty of merchantability.[7] *See* Ala. Code § 7-2-318; *Bishop v. Faroy Sales*, 336 So. 2d 1340, 1341 (Ala. 1976). Instead, a seller's implied warranty "extends to any natural person if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty." *See* Ala. Code § 7-2-318. Here, Defendant was a seller and merchant of the CAEv2 for implied warranty purposes in that it sold millions of pairs of CAEv2 to the Army, including those issued to Irizarry, and sold millions more directly to the general public in retail stores, and generally dealt in goods of that kind (*i.e.*, advertised and

---

[7] The rule is different for implied warranty claims alleging only property damage or direct economic loss, where privity of contract is required. *See Rhodes v. Gen. Motors Corp., Chevrolet Div.*, 621 So. 2d 945, 947 (Ala. 1993).

sold hearing protection devices), among a myriad of other products.[8]  The fact that it was reasonable to expect soldiers, like Irizarry, may use and be affected by the CAEv2s sold to the Army is not disputed by Defendant.  *See* Def. Mot., ECF No. 13 at 9.  And again, the Court has already found the evidence sufficient to show Irizarry suffered personal injuries as a result of Defendant's alleged breach of the warranty. Thus, the implied warranty of merchantability with respect to the CAEv2 extends to Irizarry under Alabama law.

Last, Irizarry's implied warranty of merchantability claim does not fail for lack of pre-suit notice.  The "express language" of Alabama's Uniform Commercial Code "requires only *buyers* to give notice" of a breach as a condition precedent to bringing a breach of warranty claim.  *See Simmons v. Clemco Indus.*, 368 So. 2d 509, 513 (Ala. 1979) (interpreting pre-suit notice statute, Ala. Code § 7-2-607); *see also Hart v. Yamaha-Parts Distrib., Inc.*, 787 F.2d 1468, 1474 (11th Cir. 1986) (applying Alabama law); *Lowery v. Sanofi-Aventis LLC*, 535 F. Supp. 3d 1157, 1174-75 (N.D. Ala. 2021) (same).  Warranty beneficiaries under Ala. Code § 7-2-

---

[8] "[I]mplied warranties are applicable only to sellers."  *See Ex parte Gen. Motors Corp.*, 769 So. 2d at 910.  However, "a seller is anyone who sells, including a manufacturer or distributor." *Bishop v. Faroy Sales*, 336 So. 2d 1340, 1343 (Ala. 1976) (discussing Ala. Code § 7-2-103(1)(d)); *Avery v. Cobra Enter. of Utah, Inc.*, 2013 WL 2352320, at *3 (N.D. Ala. May 23, 2013); see also Ala. Code § 7-2-314(1) (warranty of merchantability "is implied in a contract for sale if the seller is a merchant with respect to goods of that kind"); *id*. at § 7-2-103(1)(d) ("'Seller' means a person who sells or contracts to sell goods."); *id*. at § 7-2-104(1) "'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction").

318, like Irizarry, are *not* required to give pre-suit notice.[9]  *See Simmons*, 368 So. 2d at 513 ("Since the express language of the [Alabama] Code requires only buyers to give notice and a warranty beneficiary is not within the definition of buyer, notice is not required of such beneficiaries.").

In sum, the Court finds Irizarry's implied warranty of merchantability claim is not displaced by the AEMLD, does not require pre-suit notice or contractual privity, and is supported by sufficient evidence of proximate causation. Consequently, Defendant's motion for summary judgment on this claim is denied.

### D.    Fraud-Based Claims (*Counts VII-X*)

Defendant argues that all of Irizarry's fraud-based claims—which Defendant defines to include the claims for negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, and fraud and deceit—fail for lack evidence of reasonable reliance.[10]  The Court disagrees.

---

[9] Again, a warranty beneficiary includes "any natural person if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty."  *See* Ala. Code § 7-2-318.

[10] Defendant's motion also cursorily states that Irizarry did not "plead with particularity the facts as to time, place, and substance of the defendant's fraud" as required by Federal Rule of Civil Procedure 9(b).  *See* Def. Mot., ECF No. 11-12.  This argument is both untimely and fails on the merits.  As to the merits, Irizarry's complaint adopts and incorporates by reference the MDL Master Long Form Complaint, which describes the alleged fraud in great detail.  *See* Irizarry 1st Am. Compl., ECF No. 4 at 1; *In re 3M*, No. 3:19md2885, Master Long Form Compl., ECF No. 704.  In any event, the Court has already found the *evidence* sufficient to establish the only disputed element of Irizarry's fraud-based claims (reasonable reliance), and the Court finds no basis to evaluate whether the conduct was *pled* with sufficient particularity—years ago, at this point—when the *evidence* itself is sufficiently particular.  *See Firstar Bank, N.A. v. Faul Chevrolet, Inc*., 249 F. Supp. 2d 1029, 1043 (N.D. Ill. 2003) (same).  Regarding timeliness, Rule 9(b) particularity arguments typically should be addressed through a motion filed pursuant to Rule 12(e), not on

Under Alabama law, "reasonable reliance" is an essential element of any fraud or negligent misrepresentation claim. *See Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 421 (Ala. 1997) (fraud); *Bryant Bank v. Talmage Kirkland & Co., Inc.*, 155 So. 3d 231, 238 (Ala. 2014) (negligent misrepresentation). However, "it is not always necessary to prove that a misrepresentation was made directly to the person who claims to have been injured." *Thomas v. Halstead*, 605 So. 2d 1184 (Ala. 1992). Instead, reasonable reliance may be shown by evidence that: (1) defendant made misrepresentations to third-parties intending that other persons also would rely and act on them; (2) the plaintiff is in the class of persons so contemplated; and (3) the plaintiff reasonably and foreseeably relied and acted on the misrepresentations. *See Delta Health Grp., Inc. v. Stafford*, 887 So. 2d 887, 898-99 (Ala. 2004) (quoting *Thomas v. Halstead*, 605 So. 2d 1181, 1184-85 (Ala. 1992)); *see also Sims v. Tigrett*, 158 So. 326, 330 (Ala. 1934); *Bush v. Tchrs. Ins. & Annuity Ass'n of Am.*, No. 1:05cv378, 2006 WL 3075539, at n.9 (M.D. Ala. Oct. 30, 2006) (quoting *Seward v. Dickerson*, 844 So. 2d 1207, 1212 (Ala. 2002)). "Whether a plaintiff has reasonably

summary judgment. *See McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 469, 478 n.2 (6th Cir. 2014); *Bank of Mongolia v. M&P Glob. Fin. Serv.*, No. 0:08cv60623, 2010 WL 115497111, at *5 (S.D. Fla. Sept. 3, 2010); *Puckett v. McPhillips Shinbaum*, No. 2:06cv1148, 2008 WL 906569, at *24 (M.D. Ala. Mar. 31, 2008). For these reasons, the Court declines to grant summary judgment in favor of Defendant based on any argument that the fraud-based claims fail to comply with Rule 9(b).

relied on a defendant's misrepresentation is usually a question of fact." *Sampson v. HeartWise Health Sys. Corp.*, --- So. 3d ---, 2023 WL 3668558, at *13 (Ala. 2023).

Here, there is ample record evidence to raise a triable question of fact as to whether Irizarry reasonably relied on Defendant's alleged misrepresentations.  More specifically, there is evidence that Defendant affirmatively misrepresented material information regarding the safety and efficacy of the CAEv2, including the use of its yellow end on a gun range, and concealed known dangers associated with the CAEv2, from both the Army and soldiers, like Irizarry.  *See, e.g.*, CAEv2 Mil. Advert., ECF No. 20-19 at 10 (representing the CAEv2 as "protective up to approximately 190 dBP" and "sufficient to cover most of the weapons in the military inventory, including shoulder-fired rockets"); CAEv2 Mil. Advert., ECF No. 20-20 at 4 (stating that the CAEv2 "fits most ear canals" and representing yellow end of CAEv2 as protective against "weapons fire and explosions"); *id.* at 5 (representing that "[t]he chance of permanent hearing damage or disorientation from explosion is greatly reduced or eliminated" by the yellow end of the CAEv2); 3M Mil. Sales Powerpoint, ECF No. 20-21 at 3 (representing CAEv2 as "One-Size-Fits-All"); CAEv2 Mil. Advert., ECF No. 20-22 ("You Protect Us. We Protect You."); *id.* ("Hear the action now, hear life later.").  The evidence also is sufficient to establish that Defendant intended both the Army and soldiers to rely and act on the misrepresentations by purchasing, recommending, and/or wearing the CAEv2 to

protect soldiers' hearing. *See id*.; *see also* Moses 30(b)(6) Dep., ECF No. 20-18 (agreeing that "it was certainly 3M's understanding that decision-maker's in the military would be relying on the truth of the company's statements about the performance and safety of its products…[, among other internal testing…or other information that [the military] might seek to find"). Finally, there is evidence that Irizarry did, in fact, receive on verbal and written instructions regarding the safety, efficacy, and proper use of the CAEv2, and he relied on those instructions to protect his hearing from hazardous noise. *See* Irizarry Dep., ECF No. 20-15 at 4-9; Armstrong Rep., ECF No. 17-1 at 40-43, 60. On this record, a reasonable jury could find that Defendant made affirmative misrepresentations about the CAEv2 to the Army intending both the Army and individual soldiers would rely on them, that Irizarry was in the class of persons that Defendant intended to influence with the misrepresentations (*i.e.*, a soldier), and that Irizarry reasonably and foreseeably relied on the misrepresentations in choosing to use the CAEv2 during his military service. *See James v. 3M*, No. 7:20cv12243, ECF No. 29 at 5-7 (same); *Beal v. 3M*, No. 7:20cv006, ECF No. 113 at 5 (same); *Adkins v. 3M*, No. 7:20cv012, ECF No. 58 at 4-5. Therefore, Defendant's motion for summary judgment on the fraud-based claims is denied.

E.      **Gross Negligence (*XI*)**

Defendant argues that Irizarry's gross negligence claim fails because Alabama law evaluates such claims "using the same elements and standards applicable to ordinary negligence claims." *See* Def. Mot., ECF No. 13 at 12. However, that does not compel summary judgment on the claim. While a "gross negligence claim under Alabama law is properly evaluated" using ordinary negligence elements and standards, *see Polk v. Bang*, No. 1:20cv093, 2021 WL 3577962, at *3 (S.D. Ala. Aug. 12, 2021), it does require proof of "a greater degree of" culpable conduct than simple negligence (although less than wantonness), *see Coca-Cola Bottling Co. United, Inc. v. Stripling*, 622 So. 2d 882, 885 (Ala. 1993); *see also Miller v. Bailey*, 60 So. 3d 857, 867-68 (Ala. 2010). Applying those principles, district courts generally consider gross negligence claims separate and apart from simple negligence claims, and allow them to proceed where adequately supported. *See, e.g.*, *Murray v. CSX Transp., Inc*., No. 1:21cv58, 2022 WL 584076, at *2 (S.D. Ala. Feb. 25, 2022); *Moore v. Pilot Travel Ctrs*., LLC, No. 5:18cv1440, 2020 WL 1083206, at *4-5 (N.D. Ala. Mar. 4, 2020); *Craft v. Triumph Logistics, Inc*., 107 F. Supp. 3d 1218, 1220 n.1 (M.D. Ala. 2015). So too here. Because Defendant has offered no other grounds for summary judgment on Irizarry's gross negligence claim, nor even argued that the claim lacks evidentiary support, *see* Def. Mot., ECF No. 13 at 12, the claim remains.

## F.     Unjust Enrichment (*Count XV*)

Defendant moves for summary judgment on Irizarry's unjust enrichment claim because Alabama law does not permit a plaintiff to bring a claim for unjust enrichment alongside an express warranty claim.[11]     However, Irizarry has abandoned his express warranty claim.  *See* Pl. Resp., ECF No. 20 at 1.  Because there no longer is an express warranty claim and Defendant has offered no other grounds for summary judgment on the unjust enrichment claim, the motion is denied. *See Aldridge*, 2020 WL 1308335, at *5 (denying summary judgment on unjust enrichment claim under Alabama law where plaintiff "conceded dismissal" of express warranty claim).

## G.     Punitive Damages (*Count XVI*)

Defendant argues that "Irizarry cannot recover punitive damages" because "[t]here is no separate cause of action in Alabama for punitive damages."  *See* Def. Mot., ECF No. 13 at 13.  While it is true that punitive damages are not a distinct claim under Alabama law, "there are claims on which [Alabama] law authorizes the trier of fact to impose punitive damages if certain wrongfulness is proved by a

---

[11] *See White v. Microsoft Corp.*, 454 F. Supp. 2d 1118, 1133 (S.D. Ala. 2006) ("[W]here a plaintiff has brough claims sounding in both express contract and quasi-contract [(*i.e.*, unjust enrichment)] as to the same subject matter, Alabama courts have deemed the quasi-contract claim not to be cognizable."); *Callaway v. E.H. Smith Elec. Contractors, Inc.*, 814 So. 2d 893, 899 (Ala. Civ. App. 2001) (affirming dismissal of quasi-contract claim due to existence of valid, binding contract between parties covering the same subject matter).

sufficient weight of the evidence." *See Horn v. Brown*, 4 So. 3d 1106, 1109 (Ala. 2008); *see also* Ala. Code § 6-11-20 (authorizing punitive damages awards "in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice"). Based on the foregoing, Irizarry's separate cause of action for punitive damages will be deemed abandoned, and summary judgment on that separate claim granted in Defendant's favor.  However, this does not preclude Irizarry from pursuing punitive damages at trial to the extent permitted by Alabama law.  *See, e.g.*, Irizarry 1st Am. Compl., ECF No. 4 at 1 (adopting and incorporating by reference the "allegations, claims, and requested relief as set form in the [MDL] Master Long Form Complaint"); Master Long Form Compl., ECF No. 704 at 52, 55, 57, 61 (including punitive damages in prayer for relief on all counts and alleging requisite basis for the award).

Accordingly, Defendant's Motion for Summary Judgment, ECF No. 13, is **GRANTED IN PART** and **DENIED IN PART**, as follows:

1.  Summary judgment is **GRANTED** in Defendant's favor with respect to Irizarry's claims for breach of express warranty (Count V), breach of implied warranty of fitness for a particular purpose (Count VI), negligence per se (Count XII), and consumer fraud and/or unfair trade practices (Count XIII).

2.  Summary judgment is **GRANTED** in Defendant's favor with respect to Irizarry's separate cause of action for punitive damages (Count XVI); however, this does not preclude Irizarry from pursuing punitive

damages for his substantive claims at trial to the extent permitted by Alabama law.

3.   Summary judgment is **DENIED** in all other respects.

**SO ORDERED**, on this 22nd day of June, 2023.

*M. Casey Rodgers*
_____
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**